## Kellar *vs.* Sinton's Ex'or.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

Case 24.

1. Where a note is executed by one as surety, who resides out of the state, to be paid within the state, the statute of limitation of 1838, for the benefit of sureties, applies to the case.
2. The prosecution of a suit to foreclose a mortgage, given by the surety, whereby partial satisfaction of the debt was had, if more than seven years elapse after such suit, will not save the running of the statute as to the surety.
3. By the Revised Statutes the effect and operation of the act of 1838, to the relief of sureties, is preserved as to all cases occuring during its operation.

Judge MARSHALL delivered the opinion of the court.

January 6.

In July 1837, John Sinton, then a resident of the state of Pennsylvania, executed, with others, a note to G. C. Gwathmey for $1,558 54, payable one year after date, and which states on its face that Sinton and one other of the four obligors were sureties for the two principals. Sinton also executed a mortgage for the security of the debt. Under a foreclosure of this mortgage, and a decretal sale of the mortgaged estate, the net sum of $764 09 was made, and a credit entered on the note, as of the 21st of May, 1841, when the mortgage was exhausted, and the suit for foreclosure terminated without any personal decree.

Case stated.

KELLAR
vs.
SINTON'S EX'OR.

Sinton continued to reside in Pennsylvania until his death in 1844; and since his death his executors, who qualified in November, 1844, have continued to reside in the same state. In July 1852, Jacob Kellar, as assignee of the remnant of the debt above named, filed his petition in the Louisville chancery court, to subject to the payment of the demand several hundred dollars alleged to be due to the executors of Sinton from citizens of this state. The executors rely upon the fact that their testator was merely a surety for the debt, and insist, that by lapse of time, under the operation of the act of 1838, limiting actions against sureties, the demand as against them, and the estate of Sinton is barred, and their liability at an end.

It is contended that the statute referred to furnishes no bar to the claim: First. Because Sinton had removed from this state, and he and his executors were non-residents. Second. Because a suit had been brought upon the mortgage within seven years after the cause of action accrued; and third. Because, by the Revised Statutes, the act of 1838 is repealed, and as re-enacted it has no retrospective effect prior to the date of the re-enactment. These objections will be noticed in the order in which they are stated.

1st. The 3d section of the act of 1838, under which the bar is asserted in terms, embraces all sureties, their executors, &c., and it makes no exception of non-resident sureties or executors; it might, therefore, from its language, be construed as embracing all cases in which it is attempted in this state to enforce the liability of sureties or their representatives, without regard to the place at which they may have resided, or at which the contract may have been executed. But in this case the contract was made at Louisville, and was to be there performed, being dated at that place, and payable at the Bank of Kentucky. There would seem, therefore, to be no plausible ground for excluding this contract and its parties from the operation of the statute. And as Sinton resided out of the state when he executed the note, and he and his repre-

1. Where a note is executed by one as surety, who resides out of the state, to be paid within the state, the statute of limitation of 1838, for the benefit of sureties, applies to the case.

sentatives have been non-residents ever since, there has been no absconding, concealment, removal, or other indirect means on his or their part by which the remedy against him and them has been obstructed, so as to bring the case on that ground, within the saving of the 6th section of the act. The presumption is that Gwathmey knew the residence of Sinton, and knew that so far as he was concerned he must seek his remedy in another state, or upon such property of Sinton as he might have in this state, or must await his casual presence here. There is no reason for depriving Sinton of the benefit of the statute, and as more than seven years and six months elapsed from the qualification of his executors to the commencement of this suit, there is no ground for making a question as to the lapse of the period necessary to make out the statutory bar, if, in other respects, the case admits of its application.

2d. But it is said that there has already been a suit on this same cause of action, and since its accrual, and before the seven years had elapsed, so that seven years have not elapsed without suit after the cause of action accrued on this note; and, therefore, as it is argued, the case has not occurred to which the statute applies the bar. But as before the commencement of the present suit fourteen years had elapsed since the accrual of the cause of action, and as more than eleven years had elapsed since the termination of the former suit referred to, it is obvious that if the prior suit prevents the application of the bar at this time it must prevent it forever, for it will always be as true as it is now, that a suit was brought on this cause of action within seven years after it accrued. As upon this construction, it is the mere fact that there has been a suit within the seven years upon the same contract or cause of action, that is supposed to take the case out of the statute; it is immaterial against whom the action may have been brought, what may have been its nature, how it may have been conducted, or what may have been its result. But the first clause

2. The prosecution of a suit to foreclose a mortgage, given by the surety, whereby partial satisfaction of the debt was had, if more than 7 years elapse after such suit, will not save the running of the statute as to the surety.

KELLAR
*vs.*
SINTON'S Ex'OR.

of the 6th section repels this construction, since it enacts that if the plaintiff obtain a judgment or decree which is reversed or arrested, even this shall not suspend the bar for a longer time than one year from the time of reversal or arrest. It would be inconsistent to say that a mere suit, terminating without judgment or decree, should suspend the bar indefinitely or forever. This could not have been intended. The statute looks only to one suit, and that is the suit in which the liability may be attempted to be enforced after seven years have elapsed from the accrual of the action; and an intermediate ineffectual suit against another party to the contract, or against the same, or a suit only partially effectual, but which has performed its office, and is *functus officio*, is just the same as no suit at all except in case of arrest or reversal provided for in the 6th section—which provision would have been unnecessary, if without it any and every suit prosecuted even in good faith, on the same cause of action, might be relied on as taking the case out of the statute. It is obvious that a suit, the entire effects of which are exhausted without producing more than partial satisfaction, and which cannot be further prosecuted for further satisfaction, is, so far as the unsatisfied part of the demand is concerned, the same in effect as no suit, since no further fruits can be obtained from it, and any further remedy must be commenced *de novo*. These views would seem to be sufficient wholly to disprove the position contended for. But if a suit wholly or partially ineffectual might be relied as at all operative to suspend the bar, we are of opinion that the lapse of seven years after the termination of the prior suit, before the commencement of the subsequent one, would subject the last suit to the operation of the statute, because, in that case, seven years would have elapsed without suit, and after the cause of action had accrued. This has been decided under the first section of the act, with reference to issuing executions.

Upon the third objection little need be said. It is expressly provided by the Revised Statutes that no existing or accruing right shall be defeated by their operation, which would save the right of a surety accruing under the act of 1838. It is also expressly provided, that the Revised Statutes shall not have a retrospective operation unless expressly so directed. And under this provision the repeal of the act of 1838 should not effect previous cases. It would indeed be strange, if, under these provisions, the Revised Statutes, by repealing and re-enacting the act of 1838, should operate to deprive the surety in this and like cases of the benefit of a bar which was, in fact, complete before the Revised Statutes took effect.

We are satisfied that the bar by lapse of time is made out under the act of 1838. Wherefore, the decree is affirmed.

TYLER for appellants; BULLITT and SMITH for appellees.

3. By the 3d section Revised Statutes the effect and operation of the act of 1838, to the relief of sureties, is preserved as to all cases occuring during its operation.